The OKLAHOMA PUBLISHING COMPANY, Plaintiff,

v.

STANDARD METALS CORPORATION, Boris Gresov, John Christenson, Aaron Holman, Anthony Gaubis, Mary Di Rienso, Thomas J. Walsh, Arthur R. Still, Michael R. Thomas and Standard Ventures Corporation, Defendants.

No. CIV–81–1059–T.

United States District Court, W. D. Oklahoma.

May 25, 1982.

---

Michael Minnis, Pierson, Ball & Dowd, Oklahoma City, Okl., James K. Jackson, Washington, D. C., for plaintiff.

George D. Davis and Kenneth N. McKinney, McKinney, Stringer & Webster, Oklahoma City, Okl., Charles L. Stewart and Paul J. Dillon, Windels, Marx, Davies & Ives, New York City, Irving Morris, Morris & Rosenthal, P.A., Wilmington, Del., for defendants.

### ORDER

RALPH G. THOMPSON, District Judge.

This action is before the Court for consideration of defendants' Motion to Dismiss

Amended Complaint. The parties have fully briefed the issues presented by the motion and it is now ready for disposition by the Court.

The pleadings establish, as a matter of law, that while plaintiff's claims are properly cognizable under state law in the state courts, all but one of plaintiff's allegations are clearly deficient to satisfy the established requirements necessary to bring them under federal statutes for the reasons hereafter explained.

Plaintiff's amended complaint alleges seven claims for relief. Count I is based upon the defendants' alleged violations of Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5 thereunder. Count II asserts a derivative shareholder action against the individual defendants based upon the Securities Exchange Act of 1934 and Rule 10b–5. Count III alleges that the defendants have violated Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5 in that defendants controlled the affairs of defendant Standard Metals and caused the corporation to enter into patently unfair transactions as part of a scheme to perpetuate themselves in control. Count IV alleges that the individual defendants have wasted the assets of the corporation. Count V charges that the individual defendants have committed common law fraud. Count VI asserts that the individual defendants have breached their fiduciary duties, and Count VII alleges that defendant Gresov has violated Section 13(d) of the Securities Exchange Act of 1934.

Defendants have moved to dismiss Count I of the amended complaint for failure to state a claim upon which relief can be granted. Count I alleges that the defendants have committed a fraud upon the market by manipulating the price of Standard Metals' common stock to an artificially high level, beginning in January 1981, by issuing misleading press releases and quarterly reports to Standard Metals' shareholders and the public. Defendants argue that the plaintiff's allegations are fatally deficient for the reason that plaintiff has failed to allege that plaintiff relied upon the alleged-

ly misleading statements and that reliance is an essential element of a private cause of action pursuant to Rule 10b–5. Defendants further assert that, due to plaintiff's actual knowledge with regard to all of the alleged misrepresentations, plaintiff is unable to allege reliance in good faith. Plaintiff relies upon *Crane Company v. Westinghouse Air Brake Company*, 419 F.2d 787 (2nd Cir. 1969), *cert. denied*, 400 U.S. 822, 91 S.Ct. 41, 27 L.Ed.2d 50 (1970), and *Vine v. Beneficial Finance Co.*, 374 F.2d 627 (2nd Cir. 1967); *cert. denied*, 389 U.S. 970, 88 S.Ct. 463, 19 L.Ed.2d 460 (1968), for the proposition that the manipulation of stock prices to thwart a takeover effort injures the acquirer even if there is no proof that the acquirer relied upon the deception perpetrated on the marketplace.

In *Crane Company*, the Second Circuit stated:

"We have held that where the success of a fraud does not require an exercise of volition by the plaintiff, but instead requires an exercise of volition by other persons, there need be no showing that the plaintiff himself relied upon the deception. 'What must be shown is that there was deception which misled [other] stockholders and that this was in fact the cause of plaintiff's claimed injury." *Vine v. Beneficial Finance Co.*, . . . 374 F.2d at 635. Standard's deception caused injury to Crane.

Crane's tender offer could only be successful if its value to investors was attractive in comparison with the indicated value of Air Brake on the New York Stock Exchange." 419 F.2d at 797.

*Crane* is distinguishable from this controversy. *Crane* can be considered as an application of a specialized rule to a unique category of plaintiff—a "forced seller." In *Crane*, Air Brake was the target of a takeover by Crane. Air Brake management preferred a takeover by Standard and was able to insure stockholder approval of its merger with Standard by engaging in secret stock transactions so as to make the value of Air Brake's stock appear to exceed the tender offer submitted by Crane. The

Court found that the success of Standard's maneuver made Crane a forced seller of Standard's newly issued convertible preferred stock under threat of a divestiture action to be brought by Standard under the antitrust laws. The Second Circuit found that the case "falls within the rationale of *Vine* where we held that a minority shareholder in a short form merger is a 'seller' since he is entitled only to cash for his shares." 419 F.2d at 798. In this case, plaintiff does not fall within this category of minority shareholder. See, *Hirsh v. Merrill Lynch, Pierce, Fenner & Smith*, 311 F.Supp. 1283 (S.D.N.Y.1970); *Molasky v. Garfinkle*, 380 F.Supp. 549 (S.D.N.Y.1974).

■ Plaintiff in this case is seeking to acquire control of Standard Metals by acquiring stock and proxies. The plaintiff is opposed by incumbent management, rather than by a competing offeror. Even if the plaintiff fails in its attempt to acquire control, its options are not limited to only exchanging its stock for a sum offered by defendant or pursuant to an appraisal. In short, plaintiff does not stand in the shoes of a forced seller. Moreover, there is no authority for the fraud-on-the-market theory in this circuit. This theory has been accepted in the Second Circuit, *Panzirer v. Wolf*, 663 F.2d 365 (2nd Cir. 1981), Fifth Circuit, *Shores v. Sklar*, 647 F.2d 462 (5th Cir. 1981), and the Ninth Circuit, *Blackie v. Barrock*, 524 F.2d 891 (9th Cir. 1975), cert. denied, 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976). However, even if this circuit had adopted the fraud-on-the-market theory to impose liability pursuant to the Securities Exchange Act of 1934, the element of reliance is not entirely eliminated. The basis for permitting recovery under the fraud-on-the-market theory is that a party has caused manipulation of the market to occur and a purchaser on the open market, unaware of the manipulation, has relied upon the sophistication of the market to establish the market price. Under the fraud-on-the-market theory, no liability attaches where the individual plaintiff purchased despite knowledge of the falsity of a representation, or would have purchased had he known of it. See, *Blackie v. Barrock*, 542

F.2d at 906. In *Holdsworth v. Strong*, 545 F.2d 687 (10th Cir. 1976), the Tenth Circuit stated that in order for a plaintiff to recover under Rule 10b–5, he must prove justifiable reliance.

At best, plaintiff's claim in Count I is that defendants' actions caused plaintiff to knowingly pay an inflated price for Standard Metals' common stock. Plaintiff has elected to proceed in Count I under the federal securities laws. As part of this election, plaintiff is required to allege and prove reliance upon the defendants' acts or representations as a predicate to recovery. Plaintiff has not alleged, and, in the circumstances could not allege, such reliance and is therefore precluded from recovery under the statutes invoked. Accordingly, plaintiff's first claim for relief as set forth in Count I will be dismissed.

■ Defendants have moved to dismiss Count II of the amended complaint for failure to state a claim upon which relief can be granted. While plaintiff brings Count II, in part, pursuant to Rule 23.1, F.R. Civ.P., such rule does not provide the Court with subject matter jurisdiction over the matters alleged therein. Count II alleges that the individual defendants personally benefited as a result of certain transactions entered into by Standard Metals. Plaintiff alleges that the benefit resulting from these transactions is that the individual defendants were thereby able to thwart plaintiff's takeover efforts and to entrench themselves in control of Standard Metals' affairs.

In *Santa Fe Industries, Inc. v. Green*, 430 U.S. 462, 97 S.Ct. 1292, 51 L.Ed.2d 480 (1977), the Supreme Court held "manipulation," as used in § 10(b) and Rule 10b–5, generally refers to practices such as wash sales, matched orders or rigged prices that are intended to mislead investors by artificially affecting market activity. The Court went on to state that Congress intended § 10(b) to apply to instances of more than mere corporate mismanagement. In *Panter v. Marshall Field & Co.*, 646 F.2d 271 (7th Cir. 1981), the Seventh Circuit relied upon *Santa Fe Industries* to conclude that deci-

sions by directors to acquire property, as well as the motivations for those decisions, are not actionable under federal securities statutes and regulations.

At best, plaintiff's second claim for relief only states a claim cognizable under state law for mismanagement in corporate acquisitions. It does not state a claim for relief pursuant to § 10(b) or Rule 10b–5.

■ Defendants have moved to dismiss Count III of the amended complaint for failure to state a claim upon which relief can be granted. Defendants argue that this count merely alleges market manipulation, entrenchment, and waste of corporate assets and is controlled by the *Santa Fe* and *Panter* decisions. Plaintiff contends that the result of the activities alleged in this count is precisely the result that the Sixth Circuit found to be manipulative in *Mobil Corporation v. Marathon Oil Company*, 669 F.2d 366 (6th Cir. 1981).

In *Mobil*, the Sixth Circuit explained its holding that manipulation had occurred in view of the facts of the case: The directors of Marathon sought to avoid a merger with Mobil by granting to U.S.S. Corporation two separate options—the first was an option to purchase authorized but unissued shares of Marathon common stock and the second was an option to purchase Marathon's interest in the Yates Field if a third party gained control of Marathon. The effect of these options upon the bidding was that every increased dollar bid by U.S.S. for Marathon's outstanding stock cost U.S.S. only $30 million compared to a cost to Mobil of $47 million for a comparable bid increase. The Court found:

> "The size and price of the stock option, together with the fact that it was granted to USS, a tender offeror, prevented all others from competing on a par with USS for a controlling block of Marathon shares, and tipped the scales decidedly in favor of USS. In our opinion, the stock option artificially and significantly discouraged competitive bidding for the Marathon stock.
> The Yates Field option and the stock option, both individually and in combination, have the effect of circumventing the natural forces of market demand in this tender offer contest. *Were this contest a straight price-per-share auction, tender offers well in excess of the USS offer of $125 per share may have been forthcoming."* (emphasis added) 669 F.2d at 376.

*Mobil* was decided on the grounds that the options granted to USS an inequitable bargaining position between competing tender offerors to the extent that an artificial ceiling was placed upon the tender offers. The Court concluded that this constituted a manipulative scheme, even if disclosed, for the reason that it eliminated the possibility of alternative offers being presented.

*Mobil*, however, is substantially distinguishable from the case at hand to the extent that it does not provide authoritative support for plaintiff's theory. Here, plaintiff has studiously avoided the making of a tender offer for the purchase of a controlling interest in Standard Metals and in fact has expressly denied doing so. Instead, plaintiff has chosen to solicit proxies in an attempt to oust the incumbent management. Nothing asserted in Count III leads to the conclusion that the plaintiff has been prevented from seeking proxies. Rather, Count III of the amended complaint merely asserts that Standard Metals has purchased certain corporate assets by issuing previously authorized but unissued stock as consideration for the transactions. These transactions do not rise to the level of violating the federal securities laws simply because the holders of the newly issued stock are favorable to the incumbent management. If Standard Metals has received inadequate consideration for its stock, the defendants may be held liable for mismanagement of corporate assets under the appropriate state law. *Santa Fe*, supra, and *Panter*, supra. Thus Count III of the amended complaint states a claim which would be cognizable pursuant to state law only.

■ Count VII of plaintiff's amended complaint seeks injunctive relief against defendant Gresov only. Specifically, plaintiff alleges that defendant Gresov failed to report to the Securities and Exchange Commission in 1972 that he was granted a stock

option by Standard Metals for at least 44,-500 shares. Plaintiff further alleges that in 1975 the stock option was exercised and defendant Gresov received the 44,500 shares. Plaintiff alleges that defendant has failed, and continues to fail, to report these interests to the SEC pursuant to § 13(d) of the Securities Exchange Act of 1934. In Count VII, plaintiff seeks a mandatory injunction to require defendant Gresov to file such a Schedule 13D. The defendants have cited no authority, and the Court has found none, that would exempt defendant Gresov from filing such a report. Accordingly, defendants' motion to dismiss Count VII of plaintiff's amended complaint is hereby denied.

Counts IV, V and VI of plaintiff's amended complaint are plaintiff's state law claims which allege claims against the defendants individually arising from the defendants' obligations pursuant to *state* law. Jurisdiction over these claims is asserted pursuant to the doctrine of pendent jurisdiction. Inasmuch as the Court has determined that Counts II and III of plaintiff's complaint state a claim, if any, pursuant to state law and that Count I must be dismissed for failure to state a claim, pursuant to federal laws and regulations, upon which relief can be granted, the question now before the Court is whether Count VII of the claim is sufficient to support pendent jurisdiction over Counts II, III, IV, V and VI of the amended complaint.

■ The concept of pendent jurisdiction was stated as early as *Osborn v. Bank of the United States,* 22 U.S. (9 Wheat.) 738, 6 L.Ed. 204 (1824), where the Court held:

"[W]hen a question to which the judicial power of the Union is extended by the constitution, forms an ingredient of the original cause, it is in the power of Congress to give the circuit courts jurisdiction of that cause, although other questions of fact or law may be involved in it." at 823, 6 L.Ed. 204.

While the *Osborn* doctrine has developed into today's concept of pendent jurisdiction, and is still being developed, it is fundamental to the doctrine that the issues outside the scope of the Court's subject matter jurisdiction must be related to the issues over which the court possesses subject matter jurisdiction. The only remaining claim over which the Court has subject matter jurisdiction is Count VII regarding defendant Gresov's alleged failure to file a Schedule 13D. This claim is wholly unconnected with the state law claims asserted by plaintiff.

Finally, as both plaintiff and defendant Standard Metals Corporation are Delaware corporations, they are not diverse parties and no basis for federal diversity jurisdiction exists.

Accordingly, defendants' motion to dismiss is hereby granted for the reasons stated herein with regard to Counts I, II, III, IV, V and VI of the plaintiff's amended complaint. Defendants' motion to dismiss with regard to Count VII of the amended complaint is hereby denied.

There are presently pending before the Court numerous motions by the parties. Inasmuch as none of these motions are relevant to Count VII of the amended complaint, they are hereby declared moot.